## UNITED STATES *v.* BOKER & CO. (No. 1455).[1]

1. AGRICULTURAL IMPLEMENTS.

Agricultural implements are such as are employed in pursuits that minister to human and, incidentally, animal subsistence; to the requirements of life (food) and possibly men's comfort (raiment) and not merely pleasurable or ornamental ends.

2. HEDGE SHEARS.

"All other agricultural implements" includes, it is true, all implements devoted to agriculture proper, but the chief use here, as always, determines the classification, and these shears, suited for pruning trees and shrubbery, were not dutiable as agricultural implements under paragraph 391, tariff act of 1913.

## United States Court of Customs Appeals, May 21, 1915.

APPEAL from Board of United States General Appraisers, G. A. 7588 (T. D. 34665).

[Reversed.]

*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel), for the United States.

*B. A. Levett* for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importations were reported by the appraiser as "so-called hedge shears, shears made with blades especially suited for pruning trees and shrubbery." They were assessed for dutiable purposes under paragraph 128 of the tariff act of 1913 as "shears," therein provided for in the following words:

128. Penknives, pocketknives, clasp knives. pruning knives, budding knives, erasers, manicure knives, and all knives by whatever name known, including such as are denominatively mentioned in this section, which have folding or other than fixed blades or attachments, and razors, all the foregoing. whether assembled but not fully finished or finished; * * *. Scissors and shears, and blades for the same, finished or unfinished, thirty per centum ad valorem: * * *.

They are claimed by the importers to be entitled to free entry as "agricultural implements" under paragraph 391 of said act, reading:

391. Agricultural implements: Plows, tooth and disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, and all other agricultural implements of any kind and description, whether specifically mentioned herein or not, whether in whole or in parts, including repair parts.

As indicated by the competing paragraphs the issue is an initial one calling for the construction of a paragraph (391) of the new tariff law unusually comprehensive in terms, while the record presented to this court is barren of facts save the appraiser's report and sample. Scant aid is here afforded the court on a highly important issue. Accordingly we proceed to decision.

---

[1] Reported in T. D. 35472 (28 Treas. Dec., 939).

The primary question presented is the proper interpretation to be placed upon the words "agricultural implements," as here employed. That statutory use, upon the meager facts before the court, no commercial usage being shown, is in a measure reflected by the context of the paragraph, as controlling the ordinary understanding of the words as lexicographically defined.

The words "agriculture" standing alone, unqualified, would embrace about everything terrestrial beyond the cities and between the seas. There are, however, well defined and recognized limitations upon its application, clearly distinguished by the lexicographers. Added force is had in that the distinction here adopted is rested upon the primary definition of the word. Witness:

The Standard Dictionary (Twentieth Century Edition):

*Agriculture.*—1. The cultivation of the soil for food products or any other useful or valuable growths of the field or garden; tillage; husbandry; also, by extension, farming, including any industry practiced by a cultivator of the soil in connection with cultivation, as the breeding and rearing of stock, dairying, etc.

Webster's New International Dictionary:

*Agriculture.*—Art or science of cultivating the ground, including harvesting of crops and rearing and management of live stock; tillage; husbandry; farming; in a broader sense, the science and art of the production of plants and animals useful to man, including to a variable extent the preparation of these products for man's use. In this broad use it includes farming, horticulture, and forestry, together with such subjects as butter and cheese making, sugar making, etc.

Worcester's Dictionary:

*Agriculture.*—The art or science of cultivating the earth; tillage; husbandry.

Century Dictionary and Cyclopedia:

*Agriculture.*—The cultivation of the ground; especially, cultivation with the plow and in large areas in order to raise food for man and beast; husbandry; tillage; farming.

Encyclopædia Britannica (eleventh edition):

*Agriculture.*—The science, art, and industry of utilizing the soil so as to produce the means of human subsistence, embracing in its widest sense the rearing of live stock as well as the raising of crops.

Oxford Dictionary:

*Agriculture.*—The science and art of cultivating the soil; including the allied pursuits of gathering in the crops and rearing live stock; tillage, husbandry, farming (in the widest sense).

New International Encyclopædia:

*Agriculture.*—In a broad sense of the word, the science and art of the production of all plants and animals useful to man.

While, therefore, "agriculture" in its broad application may extend into and include elements of horticulture, viticulture, arbor culture, and other *allied* industries and pursuits, in its primary significance it extends to and embraces only those parts of all such as pertain to

human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental.

The language of paragraph 391 illustrates and confirms this view. Thus while "wagons and carts" are within the paragraph—such as are used in the cultivation and removal of the crops by the farmer—certainly those words would not include buggies or automobiles—pleasure vehicles—nor would they extend to the wagon or cart of the contractor entirely unused upon the farm. There is no implement enumerated within the paragraph that is not devoted to the production of food or raiment for man, and there is none so enumerated that is employed in his other pursuits.

Much stress is laid upon the words "all other agricultural implements of any kind and description." While the words "of any kind and description" are broad and most comprehensive, we must bear in mind that they are predicated of and limited to *"agricultural* implements" and therefore can not include more than those terms embrace, though of course their effect and office is to exhaust everything within that literal confinement. We are accordingly relegated to those words as above defined for the scope of this phrase and paragraph.

All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

That rule is so well established and of such frequent reiteration by the courts that its suggestion seems sufficient. This court affirmed and applied the rule as to "smokers' articles" in Knauth *v.* United States (1 Ct. Cust. Appls., 334; T. D. 31432); as to "wire rods," in Athenia Steel & Wire Co. *v.* United States (1 Ct. Cust. Appls., 494; T. D. 31528); applied it in Drakenfeld & Co. *v.* United States (2 Ct. Cust. Appls., 512; T. D. 32248); adopted it as to "jute manufacturing machinery" in United States *v.* Hempstead & Son (3 Ct. Cust. Appls., 436; T. D. 33004), and as to "philosophical and scientific instruments," etc., in United States *v.* Kastor & Bros. (6 Ct. Cust. Appls., 52; T. D. 35323). In fact no principle is more firmly established in customs adjudication. Magone *v.* Wiederer (159 U. S., 555); Magone *v.* Heller (150 U. S., 70); Cadwalader *v.* Wanamaker (149 U. S., 532); Walker *v.* Seeberger (149 U. S., 541); Chew Hing Lung *v.* Wise (176 U. S., 156); Meyer *v.* Cadwalader (89 Fed., 963); Smith *v.* United States (93 Fed., 194).

Apt illustration is afforded by this appeal. The articles are so-called "hedge shears." Hedges are purely ornamental, whether on the farm or about the city home. They do not contribute to the

subsistence of man or beast directly or indirectly. Whether or not these so-called "hedge shears" are within paragraph 391 depends upon the evidentiary fact of whether or not they are chiefly used for trimming purely ornamental hedges and shrubbery or the subsistence productions of the agriculturist. This record affords us no evidence upon the subject, and the character of the instrument is not such as *per se* conveys any satisfactory evidence upon that point. In fact the limited and unsatisfactory light thus afforded would seem against the importers. We are for these reasons of the opinion that there was not sufficient, if any, evidence in the case justifying the reversal of the collector. The decision of the Board of General Appraisers is *reversed*.