UNITED STATES *v.* IRWIN & Co. (No. 1703).[1]

1. EVIDENCE—JUDICIAL KNOWLEDGE.

    The court may well take judicial notice of that which is known by all men—that the sheep which is raised by the American agriculturist furnishes for man not only food but raiment.

2. CONSTRUCTION, PARAGRAPHS 128 AND 391, TARIFF ACT OF 1913—"SHEARS"—
   "AGRICULTURAL IMPLEMENTS."

   The classification of "shears" under paragraph 128 and "agricultural imple-
   ments" under paragraph 391, tariff act of 1913, means that all shears chiefly used
   for agricultural purposes are classifiable under paragraph 391, and other shears
   under paragraph 128.

3. SHEEP SHEARS.

   "Sheep shears, specially designed for shearing sheep" and shown to be exclusively
   used for that purpose are not dutiable as "shears" under paragraph 128, tariff act
   of 1913, but admissible free of duty as "agricultural implements" under paragraph
   391.—United States *v.* Boker & Co. (6 Ct. Cust. Appls., 243; T. D. 35472).

United States Court of Customs Appeals, December 21, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7877 (T. D. 36252).
[Affirmed.]

*Bert Hanson*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, of
counsel), for the United States.

*Brooks & Brooks* (*Albert H. Washburn* and *F. W. Brooks, jr.*, of counsel) for appellees.

[Oral argument Oct. 31, 1916, by Mr. Hanson and Mr. Washburn.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise the subject of this appeal was reported by the
appraiser in answer to the protest, which is made a part of the record
herein, as consisting of "sheep shears, specially designed for shearing
sheep." The articles were rated for duty under the provisions of
paragraph 128 of the tariff act of 1913, which, in so far as pertinent,
provides:

128. * * * Scissors and shears, and blades for the same, finished or unfinished,
* * *.

The importers protested, claiming the merchandise entitled to free
entry as "agricultural implements" under the provisions of para-
graph 391 of the said act, reading:

391. Agricultural implements: Plows, tooth and disk harrows, headers, harvesters,
reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing
machines, cotton gins, machinery for use in the manufacture of sugar, wagons and
carts, and all other agricultural implements of any kind and description, whether
specifically mentioned herein or not, whether in whole or in parts, including repair
parts.

The Board of General Appraisers sustained the protest in this
particular and the Government appeals to this court for a review of
that decision.

Paragraph 391 was construed by this court in United States *v.*
Boker & Co. (6 Ct. Cust. Appls., 243; T. D. 35472). Therein the
court defined the word "agriculture" as it deemed it used in that
paragraph. It was therein said:

While, therefore, "agriculture" in its broad application may extend into and
include elements of horticulture, viticulture, arbor culture, and other *allied* indus-
tries and pursuits, in its primary significance it extends to and embraces only those

parts of all such as pertain to human and incidental animal subsistence—the substantial requirements of life (food) and possibly man's comfort (raiment), and not the merely pleasurable pursuits; the necessities and not the essentially pleasurable or ornamental.

The court in that case further determined the classification of the articles within the limitations of the definition adopted. We said:

All these considerations imply and necessitate that the *use* of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is *chief use*.

That rule is so well established and of such frequent reiteration by the courts that its suggestion seems sufficient. This court affirmed and applied the rule as to "smokers' articles" in Knauth v. United States (1 Ct. Cust. Appls., 334; T. D. 31432); as to "wire rods," in Athenia Steel & Wire Co. v. United States (1 Ct. Cust. Appls., 494; T. D. 31528); applied it in Drakenfeld & Co. v. United States (2 Ct. Cust. Appls., 512; T. D. 32248); adopted it as to "jute manufacturing machinery" in United States v. Hempstead & Son (3 Ct. Cust. Appls., 436; T. D. 33004), and as to "philosophical and scientific instruments," etc., in United States v. Kastor Bros. (6 Ct. Cust. Appls., 52; T. D. 35323). In fact no principle is more firmly established in customs adjudication. Magone v. Wiederer (159 U. S., 555); Magone v. Heller (150 U. S., 70); Cadwalader v. Wanamaker (149 U. S., 532); Walker v. Seeberger (149 U. S., 541); Chew Hing Lung v. Wise (176 U. S., 156); Meyer v. Cadwalader (89 Fed., 963); Smith v. United States (93 Fed., 194).

Aside from the appraiser's report, which indicates the use of the importations, three witnesses were called who testified that the sole and exclusive use of these shears was for the shearing of sheep. It may be therefore taken as clearly established in the case that the use of these articles is for the shearing of sheep. It is contended by the Government that this use is that remote from the actual tending of the soil and the actual products of the land that it does not fall within the definition of "agriculture" as adopted by the court. The court is unable to agree with this contention. The court therein included within the term "agricultural implements" as used in said paragraph 391 all the elements, horticulture, viticulture, arbor culture (or as expressed by the single word arboriculture), and the allied industries and pursuits, which pertain to human and incidental animal subsistence, pointing out that this extends to the substantial requirements, which are food, and possibly man's comfort, raiment.

The court may well take judicial notice of that which is known by all men, that the sheep which is raised by the American agriculturist furnishes for man not only food but raiment. The sheep industry is a well-known one allied with and commonly conducted with the other agricultural pursuits. These importations are used in the production of man's raiment. It would seem, therefore, that sheep shears are instruments which may well be included within the term "agricultural implements" as used by Congress in the paragraph quoted.

It is urged, however, that paragraph 128 by its specific enumeration of "shears" includes sheep shears. The court has already

determined (United States *v.* Boker, *supra*) that paragraph 391 made those instruments classifiable thereunder which are used for agricultural purposes as therein limited. The court specifically found that the chief use of the articles would control, and that all of those articles chiefly used for agricultural purposes, as in said paragraph limited and defined, came within its purview. and are accordingly entitled to free entry.

That chief use having been established in this record we think brings this case clearly within the Boker case. The case of Magone *v.* Heller (150 U. S., 70) is precisely parallel. Therein it was contended that under the act of 1883 substances which were shown to be expressly used for manure were not classifiable under a provision of the statute granting free entry to "all substances expressly used for manure" because they were otherwise denominatively provided for in that act. The Supreme Court said:

Congress, for the promotion of agriculture, evidently intended that if a substance which might be described by the name of an article subject to duty under Schedule A, was within the description, in the free list, of use for fertilizing the ground, it should be exempt from duty.

This is manifest from the clause in the free list, immediately preceding that now in question, "carbon, animal, fit for fertilizing only," as well as from the clause further on in the same list, "phosphates, crude or native, for fertilizing purposes." (22 Stat., 517.) Animal carbon and crude or native phosphates are both chemical products; yet if the carbon is "fit for fertilizing only," or the phosphate is "for fertilizing purposes," it is clearly intended to come in free, notwithstanding Schedule A imposes a duty on "all chemical compounds and salts, by whatever name known, and not specially enumerated or provided for in this act, twenty-five per centum ad valorem." 22 Stat., 494; Mason *v.* Robertson (139 U. S., 624).

So, by force of the very clause in question, "all substances expressly used for manure," must be exempt from duty, *even if they* are chemical products, and *are scientifically classed as one kind of an article the name of which appears in Schedule A, or are spoken of in commerce by that name.* The agricultural *use* must prevail over the scientific *or commercial nomenclature.*

This case was reviewed and doctrine affirmed by this court in Roger & Gallet *et al. v.* United States (7 Ct. Cust. Appls., 89; T. D. 36424), the facts and application appearing in the following excerpt:

Based upon the assumptions already made with reference to the importers' claim, the issue then reduces itself to this: Under which of the paragraphs shall the merchandise be classified? One which contains the *eo nomine* provision for the article, or the other, which relates to a wide variety of toilet articles described in general terms and also contains the precise description of "all preparations used as applications to the skin, including powders and other toilet preparations?" If the language of this last paragraph was not more definite than "powders and other toilet preparations" the importers' contention would seem to be sound in view of the settled doctrine that an *eo nomine* designation prevails over words of general description. This rule, however, is one of interpretation only, and is based upon the principle that when an article is described by name Congress intends to cover such commodities as are within the meaning of the words employed as the same are generally, definitely, and uniformly understood in the trade and commerce of the country. This, however, is but a rule of construction devised and applied for the purpose of ascertaining the legislative intent,

and while of great importance, can not be said to be controlling if it appears that Congress intended the classification to be determined by the *use* to which an article is devoted rather than by the *eo nomine* description itself.

The case of Magone v. Heller (150 U. S., 70) is peculiarly illustrative of this principle. There an article concededly sulphate of potash, *eo nomine* referred to in a duty paragraph, was held to be entitled to free entry under a paragraph providing for "substances expressly used for manure." * * *

This case was reviewed in Magone v. Wiederer (159 U. S., 555) and followed, and again considered in Chew Hing Lung v. Wise (176 U. S., 156), where it was expressly stated that the contest in the Magone case was "between a clause of the tariff act of 1883, providing for a duty upon sulphate of potash *eo nomine*, and a clause exempting from duty 'all substances expressly used for manure.'" This quotation was preceded by a general statement of the rule that the commercial designation would control unless there was something else in the law that restrained its operation, and it was declared that the case of Magone v. Heller, *supra*, was not subject to such rule, manifestly because of the fact that chief use was the test. See also Fink v. United States (170 U. S., 584); United States v. Kwong (1 Ct. Cust. Appls., 14; T. D. 30773); United States v. Horrax (1 Ct. Cust. Appls., 142; T. D. 31187); Drakenfeld v. United States (2 Ct. Cust. Appls., 512; T. D. 32248): Taylor v. United States (3 Ct. Cust Appls., 498; T. D. 33162); Chrystal v. United States (5 Ct. Cust. Appls., 489; T. D. 35148).

It will be noted that the construction simply reads together the two provisions to the effect that shears shall be rated for duty under paragraph 128, provided, however, that those shears chiefly *used* for agricultural purposes shall be classified under paragraph 391 and accorded free entry.

See also Cadwalader v. Zeh (151 U. S., 171, 176), quoting with approval Maillard v. Lawrence (16 How., 57 U. S., 250).

*Affirmed.*