TOWER & SONS *v.* UNITED STATES (No. 1995).[1]

1. AGRICULTURE.

That the raising, feeding, and caring for animals, such as sheep and cattle, fall within the term "agriculture" can not be doubted.

2. CONSTRUCTION, PARAGRAPH 391, TARIFF ACT OF 1913—"AGRICULTURAL IMPLEMENTS"—ENSILAGE CUTTERS.

An implement used exclusively for the purpose of cutting corn raised on the farm and storing the product to be fed on the same farm to cattle raised and fed on the same farm, is an instrument employed in supplying sustenance to cattle and, in even a very narrow sense, is used as an agricultural implement. Such an implement is an ensilage cutter; and it is admissible free of duty under the provision for "agricultural implements" in paragraph 391, tariff act of 1913.

United States Court of Customs Appeals, December 30, 1919.

APPEAL from Board of United States General Appraisers, G. A. 8269 (T. D. 38066).

[Reversed.]

*Comstock & Washburn* (*J. Stuart Tompkins* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.

[Oral argument Dec. 18, 1919, by Mr. Tompkins and Mr. Baldwin.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This case presents the single question: Is an ensilage cutter, used in cutting green corn into small pieces which are simultaneously blown by fans through a pipe into a corn silo and there stored, to be subsequently fed to cattle, an agricultural implement within the meaning of that term as employed in paragraph 391 of the tariff act of 1913. The board answered this question in the negative, and the importers appeal. The paragraph reads as follows:

391. Agricultural implements: Plows, tooth and disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, and all other agricultural implements of any kind and description, whether specifically mentioned herein or not, whether in whole or in parts, including repair parts.

---

[1] T. D. 38239 (38 Treas. Dec., —).

That the raising, feeding, and caring for animals such as sheep and cattle fall within the term "agriculture," can not be doubted: In United States v. Irwin & Co. (7 Ct. Cust. Appls., 360; T. D. 36908) at page 362, this court (Judge De Vries delivering the opinion), said in reference to the previous decision of the court in United States v. Boker & Co. (6 Ct. Cust. Appls., 243; T. D. 35472):

The court therein included within the term "agricultural implements" as used in said paragraph 391 all the elements, horticulture, viticulture, arbor culture (or as expressed by the single word arboriculture), and the allied industries and pursuits, which pertain to human and incidental animal subsistence. pointing out that this extends to the substantial requirements, which are food, and possibly man's comfort, raiment.

If this ruling be followed, as we think it should be, it seems clear that an implement used exclusively for the purpose of cutting corn raised on the farm and storing the product to be fed on the same farm to cattle raised or kept on the same farm, is an instrument employed in supplying sustenance to cattle and, in even a very narrow sense, is used as an agricultural implement.

The general appraiser who wrote the opinion in this case states:

If the merchandise involved consisted of a machine which merely conveyed the harvested corn into the corn silo without in any way altering or changing the form and condition of the crop as grown from the soil, we should have no hesitancy in holding such an implement as included within the scope of paragraph 391. But these cutters do more than convey the green corn to the silo. When the product reaches the silo it is no longer in the shape and form of corn, but is what is commonly known as ensilage, just the same as the corn ground in the mill is converted into corn meal.

We are not able to see that the fact that the corn has assumed the condition of ensilage makes the implement used to further its ultimate use as fodder for stock any the less an agricultural implement. We are not concerned here in drawing nice distinctions between crude and manufactured articles. Indeed, an advancement of this product to the condition which, according to the modern teaching, best fits it for use is distinctly an agricultural use so long as the product produced is kept on the farm and not converted into an article to be used elsewhere.

The board referred to its own decision in T. D. 36976 (G. A. 8020), which relates to a mill for grinding meal from corn to be fed to poultry and other live stock. As that case is not before us for decision, we do not determine whether the fact, if it be so, that the meal produced was fitted for general use would justify the conclusion reached. If such be the dividing line, however, the present case is clearly distinguishable for the reason that here the farm crop which is cut and stored is not designed for and not adapted to be used off the farm. We hold that the preparation for storing, preservation, and future use of this green corn for the consumption of animals kept

on the farm is distinctly an agricultural operation and .that the machine performing the same is an agricultural implement within the purview of paragraph 391.

The decision is *reversed* and the protest claiming free entry is sustained.