WILBUR-ELLIS Co. *v.* UNITED STATES (No. 4195) [1]

United States Court of Customs and Patent Appeals, March 6, 1939

*Lawrence & Tuttle* (*Frank L. Lawrence* of counsel) for appellant.

*Webster J. Oliver*, Assistant Attorney General (*John J. McDermott*, special attorney, of counsel), for the United States.

[Oral argument February 8, 1939, by Mr. Tuttle and Mr. Oliver]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, Second Division, holding certain imported steel bale ties dutiable as assessed by the collector at the port of Los Angeles, Calif., as articles or wares, not specially provided for, composed wholly or in chief value of iron, steel, or other metal, at 45 per centum ad valorem under paragraph 397 of the Tariff Act of 1930, rather than free of duty as agricultural implements, or parts thereof, under paragraph 1604, or, alternatively, dutiable at one-half of 1 cent per pound as "wire commonly used for baling hay or other commodities" under paragraph 317, of that act as claimed by appellant.

The pertinent statutory provisions read as follows:

PAR. 317. All galvanized wire not specially provided for, not larger than twenty one-hundredths and not smaller than eight one-hundredths of one inch in diameter, of the kind commonly used for fencing purposes, galvanized wire fencing composed of wires not larger than twenty one-hundredths and not smaller than eight one-hundredths of one inch in diameter; and all wire commonly used for baling hay and other commodities, one-half of 1 cent per pound.

PAR. 397. Articles or wares not specially provided for * * * if composed wholly or in chief value of iron, steel * * * or other metal * * * whether wholly or partly manufactured, 45 per centum ad valorem.

PAR. 1604. Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided,* That no article specified by name in Title I shall be free of duty under this paragraph.

Appellant's witness R. P. Oldham testified that he appeared before the trial court (presumably as a witness, although he did not so state) in the case of *M. Martinez & Co.* v. *United States,* 24 C. C. P. A. (Customs) 285, T. D. 48703; that the appellant in that case was a customhouse broker; that the importer of the merchandise there involved and the real party in interest was Wilbur-Ellis Co., the appellant in the instant appeal; and that, except as to the gauge of the wire and the length of the articles, the merchandise in the instant appeal is the same as that before the court in the *Martinez* case.

Thereupon, counsel for appellant offered in evidence the record in the case of *M. Martinez & Co.* v. *United States, supra.* Counsel for the Government objected to its introduction on the ground that the issues in that case were not the same as those presented by appellant in the instant case.

In view of the fact that the issues in the *Martinez* case were not the same as the issues in the instant case, the trial court, on the authority of *United States* v. *Bosca, Reed, MacKinnon Co.,* 24 C. C. P. A. (Customs) 364, T. D. 48829 (on rehearing, 25 C. C. P. A. (Customs) 42, the holding of the court was reaffirmed), refused to admit the record in the *Martinez* case in evidence, and its ruling is assigned here as error.

The sole issue in the *Martinez* case, *supra,* was whether steel bale ties used for baling hay, similar to those here involved except as to length and the gauge of the wire, were dutiable as articles, not specially provided for, composed wholly or in chief value of wire, steel, or other metal under the provisions of paragraph 397, *supra,* or as wire commonly used for baling hay or other commodities under paragraph 317, *supra.* We held in that case that the steel bale ties were completely manufactured articles and, in a tariff sense, something more than wire commonly used for baling hay or other commodities, and were, therefore, dutiable under paragraph 397, *supra.*

In addition to the issue determined in the *Martinez* case (which, although here presented, is not pressed by counsel for appellant) two other issues, hereinafter set forth, are involved in the instant appeal. Accordingly, as the issues in the two cases are not the same, the court properly excluded the record in the *Martinez* case. *United States* v. *Bosca, Reed, MacKinnon Co., supra.*

On the authority of our decision in the case of *M. Martinez & Co.* v. *United States, supra,* we hold that the involved articles are not

dutiable as "wire commonly used for baling hay or other commodities" under paragraph 317, *supra*, as claimed by counsel for appellant.

It appears from the record that each of the bale ties in question is 10 feet 3 inches in length, with "one end of the wire," as stated by the trial court, "turned back and twisted so as to form a loop"; that in the operation of a hay baler loose hay is fed into a chamber and compressed into the form of a bale between two ridged wooden blocks by means of a plunger operated by a gasoline engine; that the bale ties are manually passed through the ridges in the wooden blocks and around the hay, and their two ends are manually brought together and securely tied. The entire operation, so far as the bale ties are concerned, is performed manually, and is entirely apart from any function performed by the hay baler.

Counsel for appellant contended before the trial court and contend here that the bale ties are parts of hay balers, and that as hay balers are "agricultural implements," the involved bale ties are free of duty as parts thereof under the provisions of paragraph 1604, *supra*.

It clearly appears from the record that the function of a hay baler is to compress hay into the form of bales and to retain it in its compressed form until the bales have been securely tied in the manner hereinbefore set forth, and that the only function of bale ties is to hold the hay in its compressed form for storage and transportation purposes.

It is true that hay balers and bale ties are associated together in baling hay. However, each performs its separate and independent function without the loss of any of its essential characteristics, and each retains its separate identity, name, character, and use.

We are of opinion, therefore, as was the trial court, that the bale ties in question are not integral, constituent, or component parts of hay balers as claimed by counsel for appellant. *United States* v. *Willoughby Camera Stores, Inc.*, 21 C. C. P. A. (Customs) 322, T. D. 46851; *United States* v. *E. Leitz, Inc.* (Customs Appeal 4193, decided concurrently herewith), 26 C. C. P. A. (Customs) 418, C. A. D. 49.

It is further contended by counsel for appellant that the involved bale ties are agricultural implements, and free of duty as such under paragraph 1604, *supra*.

Relative to that issue, the trial court, among other things, said:

While we have held that the bale ties in question are manufactured articles, nevertheless they perform the same function on the farm as do baling wire, rope, cord, twine, or other binding media, none of which could fairly be considered to be an agricultural implement within the meaning of said paragraph 1604.

\*    \*    \*    \*    \*    \*    \*

In our opinion binding twine is no more a part of a binder machine than thread is a part of a sewing machine. While the thread passes through the machine in the process of sewing a garment, it merely passes through the machine and becomes a part of the machine's product, to wit, the garment; and so in the

present case the bale tie becomes a part of the hay bale. By no stretch of the imagination can such a tie be considered a part of an agricultural implement or an agricultural implement itself. If they are agricultural implements, then the bale of hay *which they bind* is an agricultural implement. [Italics not quoted.]

The provisions of paragraph 1604, *supra*, were intended "to encourage agriculture by according free importation to agricultural implements," and should be given a broad and liberal construction so as to carry out the evident purpose of the Congress. *United States* v. *American Express Co.*, 12 Ct. Cust. Appls. 483, T. D. 40693; *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395. The statutory term "agricultural implements" should be given a broad, not a narrow, meaning. *United States* v. *S. S. Perry, supra.*

In holding in the *Perry* case, *supra*, that leg bands of celluloid, chiefly used for the identification of poultry, were free of duty as agricultural implements under paragraph 1604, *supra*, this court, among other things, said:

Frequently, "implement" is regarded as being synonymous with a tool or utensil used in manual work. *The term has a broader meaning which we think should be accepted in arriving at the intent of Congress in the enactment of paragraph 1604.* [Italics not quoted.] We quote several definitions of the noun "implement" from Webster's New International Dictionary:

*implement.* 1. That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war.

2. A constituent part; an element. *Obs. & R.*

3. *Scots Law.* Fulfillment, performance.

SYN. *implement, tool, utensil, instrument* agree in suggesting relatively simple construction and personal manipulation. *Implement* and tool are often interchangeable. But *implement* is the broader term, frequently implying that by which any operation is carried on: *tool* commonly suggests the implements of a craftsman or laborer; * * *

It seems to us that the poultry bands at bar are implements of the poultry raising business when chiefly used for the purpose of identification of poultry.

That growing and preparing hay for the market, including baling, is an agricultural pursuit, cannot be questioned. See *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T. D. 35472; *United States* v. *Ducommun Hardware Co.*, 7 Ct. Cust. Appls. 353, T. D. 36904; *United States* v. *Irwin & Co.*, 7 Ct. Cust. Appls. 360, T. D. 36906; *United States* v. *Spreckels Creameries, Inc.*, 17 C. C. P. A. (Customs) 400, T. D. 43835; *United States* v. *S. S. Perry, supra.*

The involved steel bale ties are not mere material, such as wire commonly used for the baling of hay or other commodities, they are completely manufactured articles. *M. Martinez & Co.* v. *United States, supra.*

The term "agricultural implement" is a designation by chief use. *United States* v. *Spreckels Creameries, Inc., supra*; *United States* v. *S. S. Perry, supra.*

The trial court found from the evidence of record, which finding is not here challenged by counsel for the Government and is supported,

we think, by the evidence, that steel bale ties like those here involved are chiefly used in the baling of hay. They are used to hold the compressed hay in its compressed form. They are, in a sense, containers. When in use, they retain their identity as bale ties just as the hay retains its identity as hay. They are a part of a bale of hay only as a basket is a part of a basket of peaches, a sack a part of a sack of grain, or a paper bag a part of a bag of candy.

It has been suggested, although there is nothing in the record to support such suggestion, that steel bale ties are used but once, and that, for that reason if for no other, they are not agricultural implements within the common and statutory meaning of that term.

It must be conceded that generally agricultural implements are articles, utensils, instruments, or tools, capable of repetitive use. However, the definitions of the terms "implements" and "agricultural implements" are not limited to such articles. Nor is "reuse" a matter of importance in applying the doctrine of chief use, as many articles which are used but once are dutiable according to their chief use; for example, drugs and medicinal preparations.

The involved articles are used extensively in preparing hay for the market, and perform an important agricultural function. They are obviously implements within the broad meaning of that term, and, in our opinion, there can be no justification in holding that they are not agricultural implements within the purview of paragraph 1604, *supra*.

But, it is argued by counsel for the Government, it would be an anomaly to hold the involved articles free of duty as agricultural implements in view of the fact that the material (steel wire) from which they are made is dutiable at one-half of 1 cent per pound under paragraph 317, *supra*, and our attention is called to the fact that prior to the enactment of the Tariff Act of 1922 "wire commonly used for baling hay and other commodities" was on the free list (see paragraph 645 of the tariff act of 1913); and that in paragraph 317 of the Tariff Act of 1922 a duty of one-half of 1 cent per pound was imposed on "wire commonly used for baling hay and other commodities," and a similar dutiable status is given such wire in the Tariff Act of 1930 (paragraph 317). It is further pointed out that, under the tariff act of 1913, steel bale ties were held not free of duty as "wire commonly used for baling hay," etc., under paragraph 645 of that act, but dutiable as "manufactures of wire" under paragraph 114 of that act; that at the time paragraph 317 of H. R. 2667 (Tariff Act of 1930) was before the Committee on Finance of the Senate, a representative of the Steel Union Co. (Inc.), and Sheet Piling (Inc.) requested that steel bale ties be included in that paragraph; that, as finally enacted, steel bale ties were not included in that paragraph; and that, therefore, it was the purpose of the Congress to provide for steel bale ties under paragraph 397, *supra*.

Relative to the decision of the Customs Court in the case of *Gerrard Wire Tying Machines Co.* v. *United States*, T. D. 39341, 42 Treas. Dec. 256, it is sufficient to say that the question of whether steel bale ties were free of duty as agricultural implements was not involved in that case, the issue there being whether such articles were free of duty under paragraph 645 of the tariff act of 1913 as "wire commonly used for baling hay," etc., or dutiable as manufactures of wire not specially provided for, under paragraph 114 of that act. Furthermore, the provisions for manufactures of wire contained in paragraph 114 of the tariff act of 1913 were not reenacted in either the Tariff Act of 1922 or the Tariff Act of 1930.

Relative to the request made to the Committee on Finance of the Senate, hereinbefore referred to, it may be said that that same matter was before this court in the case of *M. Martinez & Co.* v. *United States, supra,* and the following pertinent observation was made in our decision:

* * * we do not regard the mere negative action of Congress, upon the showing here made as to what occurred before the Finance Committee, as necessarily, or even very persuasively, indicating the legislative intent ascribed to it by the trial court. *Gulf Gypsum Co.* v. *United States, United States Gypsum Co. Appearing as Party in Interest,* 20 C. C. P. A. (Customs) 101, T. D. 45725; *United States* v. *Paramount Publix Corp.,* 22 C. C. P. A. (Customs) 452, T. D. 47453. In the latter case referring to certain statements made before the Senate Committee on Finance which was engaged in the preparation of a tariff measure, we said:

While such subject matter may be related to the enactment of the provision, we feel certain it should not be resorted to for the purpose of showing the intent of the legislature. We think it would be an unsafe practice for courts to permit such a consideration to be controlling since the enactment of the provision in the language before us might have been with an intent wholly different from that indicated by the witnesses.

We find nothing in the legislative history which permits more than a conjecture as to the purpose of the Congress in not making special provision for bale ties, and in not reenacting in the Tariff Acts of 1922 and 1930 a provision for manufactures of wire similar to the provision contained in paragraph 114 of the tariff act of 1913.

Paragraph 167 of the tariff act of 1913 provided for articles or wares "composed wholly or in chief value of iron, steel, * * * or other metal," and a like provision, except as to the rates of duty prescribed, was included in paragraphs 399 of the Tariff Act of 1922 and 397 of the Tariff Act of 1930.

It may be, as argued by counsel for the Government, although the legislative history does not so indicate, that the Congress intended to include steel bale ties under the provisions of paragraph 399 of the Tariff Act of 1922 and paragraph 397 of the Tariff Act of 1930, and, for that reason, did not include in either of those acts a provision for manufactures of wire. In view of the fact, however, that the involved articles are agricultural implements and are not specified by name in

title I of either of those acts nor specially provided for elsewhere therein, and as so-called steel baling wire had evidently ceased to be chiefly used for agricultural purposes at the time of the enactment of the Tariff Act of 1922, having been replaced in the baling of hay by steel bale ties as appears from the evidence of record, we are of opinion that, in the enactment of the Tariff Acts of 1922 and 1930, it was the purpose of the Congress to carry out its established policy of encouraging agriculture by admitting imported steel bale ties free of duty as agricultural implements. As duty-free agricultural implements are generally manufactured from dutiable materials, there is no anomaly in holding steel bale ties made from dutiable material to be free of duty as agricultural implements.

For the reasons stated, the judgment is *reversed,* and the cause *remanded* for proceedings consistent with the views herein expressed.