W. J. Byrnes & Co. *v.* United States (No. 4407)[1]

United States Court of Customs and Patent Appeals, March 1, 1943

*Eugene R. Pickrell* for appellant.

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks* and *Alfred A. Taylor Jr.*, Special attorneys, of counsel), for the United States.

[Oral argument February 2, 1943, by Mr. Pickrell and Mr. Taylor]

Before Garrett, Presiding Judge, and Bland, Hatfield, Lenroot, and Jackson, Associate Judges

Bland, Judge, delivered the opinion of the court:

Appellant, W. J. Byrnes & Co., representing the ultimate consignee, Adolphe Hurst & Co., Inc., protested the action of the collector

[1] C. A. D. 229.

at the port of San Francisco in classifying an imported polymer of acetaldehyde, invoiced as metaldehyde, and assessing it for duty at 6 cents per pound and 30 per centum ad valorem under paragraph 2 of the Tariff Act of 1930. In the protest it was claimed that the merchandise was free of duty under paragraph 1604 of said act at "all other agricultural implements of any kind or description, not specially provided for."

The United States Customs Court, First Division, in a divided opinion, overruled the protest. From the judgment of the Customs Court this appeal has been taken.

The pertinent portions of the paragraphs of the Tariff Act of 1930 which are involved here read as follows:

PAR. 2. Acetaldehyde, * * * homologues and polymers of all the foregoing; * * * 6 cents per pound and 30 per centum ad valorem.

PAR. 1604. Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and *all other agricultural implements of any kind or description, not specially provided for*, [italics ours] whether in whole or in parts, including repair parts: *Provided*, That no article specified by name in Title I shall be free of duty under this paragraph.

No testimony was taken, but certain facts were stipulated by the parties. The pertinent portion of the stipulation reads:.

It is hereby stipulated and agreed by and between the attorneys for the respective parties hereto—

(1) That the merchandise, the subject of this protest, is a polymer of acetaldehyde, a chemical compound in tablet form known as Metaldehyde;

(2) That as of the date of importation of said Metaldehyde, Metaldehyde was chiefly used in the United States by farmers as an insecticide for the destruction of slugs and snails which are detrimental to their vegetable and citrus fruit crops;

(3) That this use of Metaldehyde as an insecticide has only been the chief use in the United States since the early part of 1937;

(4) That as of June 17, 1930, Metaldehyde was not used at all as an insecticide in the United States;

\* \* \* \* \* \* \*

It is the contention of appellant that metaldehyde, which, on the date of importation, was chiefly used in the United States as an insecticide, is an agricultural implement and free of duty under paragraph 1604; that the article is not "specified by name in Title I" and therefore is included within said paragraph 1604 although it is a polymer of acetaldehyde provided for in paragraph 2. Appellant urges that "polymer" is a broad term applying to a number of different articles, such as the instant merchandise, formaldehyde, and others of the same chemical group; that the trial court erred in applying the doctrine of *ejusdem generis* in the construction of paragraph 1604; that metaldehyde, with its stated use, clearly falls within certain dictionary definitions of the term "implement" quoted in appellant's brief; and that appel-

lant's position is supported by this court's decisions in *United States* v. *S. S. Perry*, 25 C. C. P. A. (Customs) 282, T. D. 49395, and *Wilbur-Ellis Co.* v. *United States*, 26 C. C. P. A. (Customs) 403, C. A. D. 47, the first of which cases involved leg bands for chickens and the latter, wire bale ties. Other authorities, which we will not need to discuss, were cited by both appellant and appellee.

In urging the applicability of this court's decision in the *Perry* case, *supra*, appellant quotes therefrom the following:

\* \* \*. We think the term "implements of any kind or description" as it appears in paragraph 1604 should not be given its narrowest meaning. Frequently, "implement" is regarded as being synonymous with a tool or utensil used in manual work. The term has a broader meaning which we think should be accepted in arriving at the intent of Congress in the enactment of paragraph 1604. \* \* \*.

In the same case we quoted various definitions, some of which appellant quotes here. We again set out the following from Webster's New International Dictionary:

implement. 1. That which fulfills or supplies a want or use; esp., an instrument, tool, or utensil used by man to accomplish a given work; as, the *implements* of trade, of husbandry, or of war.

2. A constituent part; an element. *Obs. & R.*

3. *Scots Law.* Fulfillment, performance.

Syn. *implement, tool, utensil, instrument* agree in suggesting relatively simple construction and personal manipulation. *Implement* and *tool* are often interchangeable. But *implement* is the broader term, frequently implying that by which any operation is carried on: *tool* commonly suggests the implements of a craftsman or laborer; \* \* \*.

It will be noticed that the term "implement" often has been used with a meaning that could not possibly have been intended by Congress when it enacted the paragraph in controversy here. It has been called to our attention, although the irrelevancy of the matter is obvious, that the President, in his proclamation putting into effect the Neutrality Act of 1939, interpreted the language of Congress, "arms, ammunition, and implements of war," broadly enough to include poison gases, powder, etc. Our attention has also been directed to the fact that the dictionary, in defining the term "implement," refers to "the implements of trade, of husbandry, or of war." Husbandry means agriculture, and appellant in effect contends that the chemical at bar is an implement of husbandry; that Congress used the phrase "all other agricultural implements of any kind or description" in its broadest sense; and that it should be construed broadly enough to include everything which fulfills the want of the agriculturist.

In oral argument, appellant's counsel took the position that under his proposed broad construction he would be forced to admit that the provision in paragraph 764 for "all other garden and field seeds not specially provided for, 6 cents per pound" would be invaded and made

free of duty by virtue of the language of said paragraph 1604, since all other garden and field seeds doubtless are used chiefly by agriculturists and are not specified by name in title I of the act.

While this court expressed the view in the *Perry* case, *supra,* that the narrow meaning of "implement"—i. e., a tool—was not intended by Congress, and that a meaning sufficiently broad to encompass leg bands for chickens was intended, there was nothing in that decision to indicate that this court thought Congress intended, by the language used, that everything which the farmer might need and which was chiefly used by farmers and not specified by name should be free-listed. Though Congress manifestly desired to show tariff liberality to the farming class, there is no reason to believe that it contemplated doing what appellant here states it has done.

In the *Wilbur-Ellis* case, *supra,* we held that the baling of hay was an agricultural pursuit and that steel bale ties, which were used in baling the hay and which were not merely material, like wire, but were completely finished articles made from wire, should properly be regarded as agricultural implements. We see a vast difference between an implement used by poultry raisers on the legs of chickens or articles made from wire and chiefly used for baling hay, on the one hand, and a chemical in tablet form chiefly used as an insecticide, on the other. Among the differences is the fact that the leg bands and bale ties are not consumed or destroyed in the process of use, as is the merchandise at bar.

Appellant criticized the tribunal below because of the fact that it stated:

\* \* \* we will hazard a guess that they [the metaldehyde tablets] are dissolved and that the solution so formed is sprayed on the plants or trees to be protected, or is injected into the earth. \* \* \*.

It is true that the record does not show how the tablets are used, but it seems obvious that they would not themselves, in the form imported, be sprayed or otherwise placed upon anything for insecticidal purposes. And after all, the trial court's "guess" was not so farfetched as appellant seems to believe it to be. We think we must assume that the tablets and the chemical of which they are composed would necessarily disappear in the process of use. This conclusion seems inevitable, regardless of the statement by appellant's counsel in oral argument that the tablets are mixed with bran or similar substances and the mixture is then wetted and placed where it may be consumed by insects, etc.

It is not the purpose of this court, in emphasizing the said difference between the implements involved in the two decisions above referred to and the instant merchandise (which rests in the fact that the latter, as distinguished from the former, is consumed in the process of use) to lay this fact down as a hard and fast rule or criterion for

determining when a given thing is or is not an agricultural imple-ment. This observation merely serves to point out one characteristic of the instant merchandise that differs from those of such merchan-dise as we think Congress had in mind when it used the controverted language.

To accept the suggestion of appellant that "agricultural imple-ments of any kind or description" should cover everything that fulfills or supplies a want of the agriculturist in the pursuit of his occupation, if chiefly so used, would be to free-list things which clearly were never intended to be so treated by Congress.

It may be of interest to note that Congress took special pains to provide in the free list for some things chiefly used in agriculture; for example, certain kinds of binding twine qualified by certain specifications. The implication is that other binding twine would be dutiable elsewhere in the tariff act. Under appellant's conten-tion, all binding twine would be an agricultural implement and would be free of duty. (It must be remembered that in the *Wilbur-Ellis* case, *supra*, this court distinguished baling wire from bale ties made from baling wire.) If appellant's contention is well-grounded, it would have been unnecessary for Congress to provide for manures and materials used for fertilizer, as free of duty under paragraph 1685; or for the various articles such as tankage, etc., used either for fer-tilizer or animal food, under paragraph 1780; or for barbed wire under paragraph 1800. And, as being more pertinent to the exact point of this case, it seems proper to mention the fact that if Congress contemplated disinfectants and insecticides to be free of duty as agricultural implements, it would not have specifically mentioned *Paris green and London purple* in free-list paragraph 1737 or *sheep dip* in paragraph 1759.

The majority of the trial court, in arriving at its conclusion that the merchandise at bar did not fall within the controverted agri-cultural paragraph, applied the doctrine of *ejusdem generis* and held that the articles at bar were not *ejusdem generis* with those definitely or specifically named in the paragraph. In the dissenting opinion. it was pointed out that this court in *United States* v. *Boker & Co,,* 6 Ct. Cust. Appls. 243, T. D. 35472, construed the term "all other agricultural implements of any kind and description" and in effect held that while the language limited the articles included as agri-cultural implements, the term "agricultural implements"—

can not include more than those terms embrace, though of course their effect and office is to exhaust everything within that literal confinement. We are accordingly relegated to those words as above defined for the scope of this phrase and paragraph.

All these considerations imply and necessitate that the use of the implement must determine its classification whether or not an agricultural implement within the paragraph, and that that use, and the determinative fact, is chief use.

To the same effect is a decision of the Circuit Court of the Southern District of New York, *A. Steinhardt & Bro.* v. *United States*, 126 Fed. 443, which involved the tariff term "pipes and smokers' articles * * * and all smokers' articles whatsoever." It was there held that the doctrine of *ejusdem generis* was not applicable by reason of the broad language used.

We think the majority of the trial court was in error in making application of the doctrine in the instant case, and this court did not do so in the *Perry* (chicken leg band) case or in the *Wilbur-Ellis* (bale tie) case. We agree with the holding of the majority that the merchandise at bar does not fall within the term "agricultural implements of any kind or description" but not for the reason that said merchandise is not *ejusdem generis* with the things named specifically in the paragraph.

Holding as we do that the instant merchandise is not an agricultural implement within the meaning of paragraph 1604, we, as did the trial tribunal, find it unnecessary to pass upon the question as to whether or not the instant merchandise is "specified by name in Title I."

The judgment of the United States Customs Court is *affirmed*.