(C.D. 2526)

STAALKAT OF AMERICA, INC. *v*. UNITED STATES

United States Customs Court, Second Division

(Decided April 7, 1965)

*Stein & Shostak* (*S. Richard Shostak* and *Marjorie M. Shostak* of counsel) for the plaintiff.

*John W. Douglas*, Assistant Attorney General (*Morris Braverman* and *Charles P. Deem*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: This case involves the proper classification of an article, described on the commercial invoice as a "Staalkat-Libra" 6R6 agricultural machine, which was assessed with duty at the rate of 13¾ per centum ad valorem under the provisions of paragraph 353 of the Tariff Act of 1930, as modified by the Torquay Protocol to the

General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, which provides as follows:

> Articles having as an essential feature an electrical element or device, * * * wholly or in chief value of metal, and not specially provided for:
>
>    *      *      *      *      *      *      *
>      Other (except * * *) _____ 13¾% ad val.

It is the contention of the importer herein that said article is properly free of duty under the provisions of paragraph 1604 of the Tariff Act of 1930, which provides as follows:

> Agricultural implements: Plows, tooth or disk harrows, headers, harvesters, reapers, agricultural drills and planters, mowers, horserakes, cultivators, thrashing machines, cotton gins, machinery for use in the manufacture of sugar, wagons and carts, cream separators valued at not more than $50 each, and all other agricultural implements of any kind or description, not specially provided for, whether in whole or in parts, including repair parts: *Provided*, That no article specified by name in Title I shall be free of duty under this paragraph.

Alternatively, plaintiff contends that if the imported article is not an agricultural implement within the purview of paragraph 1604, *supra*, it is then properly duitable at the rate of 11½ per centum ad valorem, under the provisions of paragraph 372 of the Tariff Act of 1930, as amended by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, which provides as follows:

> Machines, finished or unfinished, not specially provided for:
>
>    *      *      *      *      *      *      *
>      Other (except * * *) _____ 11½% ad val.

The record herein consists of the testimony of three well-qualified witnesses, two called on behalf of plaintiff and one on behalf of defendant. In addition thereto, a pamphlet describing pictorially the merchandise at issue was received in evidence as plaintiff's exhibit 1.

From the record, it would clearly appear that the function of the imported article is threefold. The testimony of Dr. Cliff D. Carpenter with respect to the three functions is as follows:

> Generally the machine separates—it has 3 functions: It separates the eggs by sorting, by a weighing device, into various weights, for example, a standard dozen eggs, which we call a standard dozen eggs, weighs 24 ounces. A medium egg, a dozen weighs 21 ounces. Small eggs weigh 18 to 21 ounces; and then we can go on down to peewees in the order of some 15 ounces. Then we get on the larger side, extra large might be considered in the range of 26 or 27 ounces to the dozen. Then we get into jumbos. So we set up from peewees to the extreme end, 8 different recognized weights of eggs. So this machine divides those eggs, because hens don't lay all eggs the same size.

> The second thing it does, it provides for viewing by what we call flash candling, the interior quality of the egg, and this is the word "grading."

> And then it provides also as the eggs are rolled off the weighing scales onto the gathering tables or down the lanes, it provides for a marking service or mechanism for any reason if you wish to identify the egg by a specific symbol.

Based upon the foregoing description and the testimony of the witnesses, there appears to be no question as to the use of the imported article. The issue primarily presented is whether an article performing these three functions falls within the intendment of the provisions for agricultural implements set forth in paragraph 1604, *supra*. There is no doubt that the raising of poultry for either meat or eggs is an agricultural pursuit. This was affirmatively so held in *United States* v. *S. S. Perry*, 25 CCPA 282, T.D. 49395, wherein certain celluloid poultry leg bands, chiefly used for the identification of poultry, were held to be free of duty as agricultural implements under said paragraph 1604, *supra*. Subsequently, in the case of *Inter-Maritime Forwarding Co., Inc.* v. *United States*, 45 CCPA 125, C.A.D. 685, certain "chixexers," used in making internal optical inspections through the vent or cloaca of chicks to ascertain their sex, were held to be properly entitled to entry free of duty under said paragraph 1604, *supra*.

It is well-settled law that paragraph 1604 is more specific than paragraph 353 or paragraph 372 of said act, as modified, *supra*, provided, of course, that the imported article is not specified by name in title I of said act. A review of the dutiable provisions of said act, title I, clearly establishes that the imported article is not specified by name. Accordingly, if the imported article is an agricultural implement, its proper classification lies within the purview of paragraph 1604 of said act.

The provision for agricultural implements first appeared in the Tariff Act of 1913 and was reenacted in the Tariff Acts of 1922 and 1930. The basic test to ascertain whether an article responds to this provision is whether the article belongs to that class or kind which is chiefly used as an agricultural implement in the production of food from the soil or in the raising of domestic animals thereon for the requirements of life (food) or men's comfort (raiment). *United States* v. *Boker & Co.*, 6 Ct. Cust. Appls. 243, T.D. 35472; *United States* v. *Tower*, 6 Ct. Cust. Appls. 562, T.D. 36199; *Wilbur-Ellis Co. et al.* v. *United States*, 18 CCPA 472, T.D. 44762.

The test of where an implement is used and who uses it has further entered into the picture in *United States* v. *Spreckels Creameries, Inc.*, 17 CCPA 400, T.D. 43835, wherein certain cylindrical metal 10-gallon cans, intended for use in the transportation of milk, were held not to be agricultural implements, since the record did not clearly establish whether said cans used by the cooperative creamery were the property of the cooperative, or the individual farmers who composed this organization. The court was also of the opinion that the record did not satisfactorily establish the chief use of the milk cans on farms or by farmers. Subsequently, this test was liberalized in *Inter-Maritime Forwarding Co., Inc.* v. *United States*, *supra*, wherein it appeared that

the "chixexers," while extensively used by individuals who raised poultry, were also used by so-called contract specialists who did not raise poultry. The court held the article involved therein to be entitled to entry free of duty under paragraph 1604, *supra.*

Nevertheless, the true test for the determination of whether a machine such as is involved herein, the sole functions of which are the sorting, grading, and marking of eggs, is an agricultural implement is not who owns it or where it is used, but, what is its chief use? In other words, is it chiefly used for agricultural purposes? Irrespective of who owns the instant machine or where it is located, it seems obvious that it performs the functions of a marketing device, and is not one devoted to the agricultural production of food, to wit, eggs. Therefore, the machine is clearly excluded from the provision for "agricultural implements." Every article used by a farmer is not necessarily an agricultural implement within the intendment of paragraph 1604, *supra.* *W. J. Byrnes & Co.* v. *United States,* 30 CCPA 166, C.A.D. 229.

The cases relied upon by plaintiff herein, such as the *Perry* case, *supra,* are distinguishable from the case at bar. In that case, the leg bands were applied for the purpose of ascertaining the age of the chickens. This is necessary in the raising of chickens. Likewise, the determination of the sex of a chicken in the *Inter-Maritime Forwarding* case, *supra,* was also necessary in the raising of chickens.

In the case of *Wilbur-Ellis Co.* v. *United States,* 26 CCPA 403, C.A.D. 47, the bale ties involved were held to be agricultural implements, since the growing and preparing of hay is an agricultural pursuit.

The sheep shears involved in *United States* v. *Irwin & Co.,* 7 Ct. Cust. Appls. 360, T.D. 36906, and the wool presses involved in *J. C. Findlay* v. *United States,* 36 Treas. Dec. 283, T.D. 37964, G.A. 8246, are likewise distinguishable from the case at bar. In the latter case, the presses were used to place wool in condition for convenience and economy in handling, storage, and transportation. In the *Irwin* case, *supra,* the court took judicial notice of the fact that "* * * the sheep which is raised by the American agriculturist furnishes for man not only food but raiment." The court, accordingly, held said shears to be agricultural implements.

Although the record establishes that the imported machine is extensively used by farmers or farmer producers and cooperatives, as well as producers who do not raise their own flock, it would appear that the imported article is not such an article or implement as is of the same class or kind which is used in agricultural pursuits. It is our opinion that the sorting, grading, and marking of eggs is a marketing process and not an agricultural pursuit. While we agree

that the provision for free entry of agricultural implements under paragraph 1604, *supra*, should be liberally construed, to include the imported machine, would not fall within the intendment of Congress in enacting said provision.

In view of our conclusions that the imported article is not an agricultural implement, entitled to free entry under the provisions of paragraph 1604 of said act, *supra*, consideration must be given to the alternative claim of the importer herein. It is alternatively claimed that the provisions of paragraph 353, as modified, *supra*, are not applicable to the imported merchandise, since it was imported without any electric elements and, further, that it may be operated by other sources of power than electricity without any change to the machine *per se*. The question as to what constitutes an essential electrical feature within the statutory provision at issue has been the subject of judicial construction in numerous cases. In *United States* v. *Dryden Rubber Co.*, 22 CCPA 51, T.D. 47050, two inquiries were set forth as follows:

There are two inquiries, therefore, when the question of the classifiability of an article under this division of the paragraph is under consideration: First, is it essentially an electrical article? The electrical feature must be an essential feature, without which the article will not function, normally, for the purposes intended, for, it must be manifest, that if it be not an electrical article, it does not come within the division at all. Second, if it is such an electrical article, is it an article named in the language, or within the class of articles named in this paragraph?

From what has been said, it follows that if the article, when it is imported, is designed and constructed to use electrical power, or other power, interchangeably, then it has not, as an essential feature, an electrical element or device.

In the case at bar, the involved machines were imported without electrical features, and the evidence adduced herein was to the effect that any form of power could be utilized to run the machine, which was designed to be operated by belt and pulley. This is similar to the manner in which the power was transferred to the cocoa liquor grinding mill involved in *United States* v. *Baker Perkins, Inc., et al.*, 46 CCPA 128, C.A.D. 714, wherein the court held that the mere contemplation of the use of electricity is not sufficient to bring the article within the provisions of paragraph 353 and further concluded with respect to machines operated by pulleys as follows:

* * * In this day and age the water wheel and steam engine have passed from the commercial scene insofar as the operation of factory machine tools is concerned. One need not look far to discover that almost every machine in a factory is operated by an electric motor as a practical commercial matter. If this fact is to be taken into consideration in construing paragraph 353 then the humblest wood-turning lathe and every other device having a pulley or sprocket on it for the attachment of a drive belt or a chain is going to become an "article having as an essential feature an electrical element or device" because,

practically, it is going to be operated by electrical motive power if it is operated at all.

Based upon the foregoing, it would seem that the imported article can utilize power other than electricity without modification or change to the machine *per se*. Therefore, except for the provision for candling eggs which employs fluorescent lights, which will be discussed separately, *infra*, it is clear that the imported article would not fall within the first category set forth in the *Dryden Rubber* case, *supra*. Accordingly, insofar as the application of motive power is concerned, the imported article does not fall within the purview of paragraph 353, as modified, *supra*. The record describing the functions of the device and plaintiff's exhibit, which pictorially represents it, establish that it is a machine for tariff purposes.

While the record contains some evidence that the imported machine can be used without the candling function, it is not of a convincing nature. In fact, upon cross-examination, Mr. Backer admitted that it would be unlikely that one would buy the machine for merely sorting the eggs. Accordingly, the candling feature employing the fluorescent lights, which are attached to the machine in this country, is essential, in our opinion, to the operation of the imported machine.

Under the two inquiries set forth in the *Dryden Rubber* case, *supra*, the second inquiry pertains to an article that does have an essential electrical feature. This inquiry goes into the question of whether it is an article named in the language or within the class of articles set forth in said paragraph 353.

In the case of *United States* v. *S. P. Skinner Co., Inc.*, 46 CCPA 105, C.A.D. 708, certain "log fires" were held to be properly subject to classification under the provisions of paragraph 353 of the Tariff Act of 1930, as modified, rather than under the provisions of paragraph 339 of said act, as modified, as household utensils. The log fires involved therein depended upon an electric bulb and a spinner which was actuated by the heat from the bulb. The court, in its opinion, stated that the doctrine of *ejusdem generis* should be given liberal application, in view of the wide variety of exemplars named in said paragraph 353. The appellate court, in the *Skinner* case, *supra*, agreed with this court and made the following comment:

We are in agreement with the conclusion reached by the Customs Court as to paragraph 353. Obviously there are wide differences in size, value, use, and method of operation between locomotives, portable tools, refrigerators, and signs, all of which are named in the paragraph and it seems evident that Congress intended to include a wide range of articles, of which those named were merely exemplary. In our opinion it would defeat the purpose of the paragraph to include in it only such articles as had a close correspondence to some particular one of the wide variety listed.

In view of the foregoing, we are of the opinion that the candling provision of the imported machine, which we have held to be essential to

the operation of the imported machine, is sufficient to bring it within the requirements of paragraph 353, *supra*, and, accordingly, the protest is overruled.

Judgment will be entered accordingly.