ROGER & GALLET *et al. v.* UNITED STATES (No. 1631).[1]

1 CONSTRUCTION—CONGRESSIONAL INTENT CONTROLS.

Classification by *use* will prevail over an *eo nomine* designation if it appears that Congress so intended.

2. TOILET TALC, HOW DUTIABLE.

Powdered talc, to which a small quantity of boric acid has been added, the use and purpose of which are as a toilet preparation for application to the skin, is dutiable according to that use under paragraph 48, tariff act of 1913, and not as ground talc under paragraph 69.

## United States Court of Customs Appeals, May 12, 1916.

APPEAL from Board of United States General Appraisers, G. A. 7800 (T. D. 35844).

[Affirmed.]

B. A. Levett for appellants.

Bert Hanson, Assistant Attorney General (John R. Rafter, special attorney, of counsel), for the United States.

[Oral argument Apr. 28, 1916, by Mr. Levett and Mr. Hanson.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The importations here are a well known and commonly used toilet article composed chiefly of powdered talc to which a small quantity of boric acid has been added, the function of the latter being antiseptic and healing. The greater part of the importations have also been perfumed. This powder is in small packages, designed and ready for the consumer's use.

It was assessed by the collector and held by the Board of General Appraisers classifiable under paragraph 48 of the tariff act of 1913, which we quote:

48. Perfumery, including cologne and other toilet waters, articles of perfumery, whether in sachets or otherwise, and all preparations used as applications to the hair, mouth, teeth, or skin, such as cosmetics, dentifrices, including tooth soaps, pastes, including theatrical grease paints, and pastes, pomades, powders, and other toilet preparations, all the foregoing, if containing alcohol, 40 cents per pound and 60 per centum ad valorem; if not containing alcohol, 60 per centum ad valorem; floral or flower waters containing no alcohol not specially provided for in this section, 20 per centum ad valorem.

The importers claim classification under paragraph 69 of the same act, which is as follows:

69. Talcum, ground talc, steatite, and French chalk, cut, powdered, washed, or pulverized, 15 per centum ad valorem.

The importers concede "for the purposes of this case that the article is a toilet preparation, since its chief use is as an application to the skin," and well say "that use is so familiar to everyone that it is unnecessary to discuss it further." Their claim for classification under paragraph 69 rests upon the proposition, not that the imported merchandise is in fact talcum or ground talc within the paragraph, for concededly it is composed of talc and at least one other substance, but because, as it is claimed, they have established by the required measure of proof that it is commercially so known.

Upon the question of commercial designation, the importers introduced six witnesses who testified to the following trade designations

of the merchandise: One, as talcum, talcum powder, or powdered talc; three, as talcum powder; one, as talcum or talcum powder; and some were of opinion that the commercial designation was the same whether the powder was or was not perfumed. In connection with the evidence of some of these witnesses, orders given for the merchandise by dealers therein and various price lists, trade catalogues, or circulars were introduced from which it appears, and the witnesses so testified, that in buying and selling the perfumed powders they are usually designated by appropriate words, such as "talcum rose," "talcum violet," "violet sec talcum," "fleur d'amour," "cashmere bouquet," "violet talc powder," or other terms descriptive of the particular perfume desired. The evidence tending to show commercial designation is undisputed.

The board in its opinion did not discuss the question of commercial designation, but from the fact that this was the sole claim made by the importers before it, we assume that the board intended to find against them on that issue.

Paragraph 69 is new. Prior to its enactment in the act of 1913, merchandise like that under consideration had been classified under paragraphs similar to or identical with paragraph 48 which may be found in preceding tariff acts.

Talc is imported in the crude rock, in the form of cut talc (what this is, is not very definitely explained), and in the ground or powdered form. It is used in the india rubber and paint industries, in filling cotton cloth, in the paper business, and in the manufacture of face and toilet preparations. The undisputed evidence of Government witnesses is that it is a common article of merchandise, imported in large quantities, and that by far the greater proportion thereof is devoted to uses other than the manufacture of toilet powders.

The importers' contention is that they have established that these toilet powders are commercially known as talcum, talcum powder, or powdered talc, and therefore that the same are within the *eo nomine* provisions of paragraph 69 for talcum or ground talc, because as it is claimed talcum and ground talc are synonymous, except as to the word "ground," and include talc in all its forms. They further claim that the statute being so interpreted and the evidence so applied such *eo nomine* designation is a more precise description of the merchandise than the term "applications for the skin" or "toilet preparations" in paragraph 48. They do not, however, extend the discussion to the more precise statutory term, "all preparations *used* as applications for the skin," found in the paragraph.

We assume for the present, without deciding, that the importers' claim of commercial designation as talcum, talcum powder, or powdered talc has been established, and that it brings the merchandise

within the *eo nomine* designation of paragraph 69. Without such assumptions it is clear that the imported merchandise would not be within that paragraph because it is something more than talc or ground talc. The boric acid is an additional component and pos-. sesses a desirable quality which it imparts to the finished product.

Paragraph 48, stripped of the language that is irrelevant to the issue, may be considered as if it read as follows:

> Perfumery, articles of perfumery. and all preparations used as applications to the skin, including powders and other toilet preparations.

.Based upon the assumptions already made with reference to the importers' claim, the issue then reduces itself to this: Under which of the paragraphs shall the merchandise be classified? One which contains the *eo nomine* provision for the article, or the other, which relates to a wide variety of toilet articles described in general terms and also contains the precise description of "all preparations used as applications to the skin, including powders and other toilet preparations?" If the language of this last paragraph was not more definite than "powders and other toilet preparations" the importers' contention would seem to be sound in view of the settled doctrine that an *eo nomine* designation prevails over words of general description. This rule, however, is one of interpretation only, and is based upon the principle that when an article is described by name Congress intends to cover such commodities as are within the meaning of the words employed as the same are generally, definitely, and uniformly understood in the trade and commerce of the country. This, however, is but a rule of construction devised and applied for the purpose of ascertaining the legislative intent, and while of great importance can not be said to be controlling if it appears that Congress intended the classification to be determined by the *use* to which an article is devoted rather than by the *eo nomine* description itself.

The case of Magone *v.* Heller (150 U. S., 70) is peculiarly illustrative of this principle. There an article concededly sulphate of potash, *eo nomine* referred to in a duty paragraph, was held to be entitled to free entry under a paragraph providing for "substances expressly used for manure." While the question of classification under the *eo nomine* designation when confronted with a competing paragraph providing for exclusive use was not discussed, yet the court could not have reached the conclusion it did had not this question been in mind. The rule was established in the case that where use was the test, as in the term "expressly used for manure," it required classification thereunder of "those substances the only common use of which, either by themselves or in combination with other materials, is for the purpose of fertilizing the soil." It was held that the question of common use was one of fact to be determined according to applicable rules in such cases, and it was said that exclusive use

for the designated purpose was not necessary, but that "if the only common use of a substance is to be made into manure, or to be itself spread upon the land as manure, the fact that occasionally, or by way of experiment, it is used for a different purpose will not take it out of the exemption."

This case was reviewed in Magone *v.* Wiederer (159 U. S., 555) and followed, and again considered in Chew Hing Lung *v.* Wise (176 U. S., 156), where it was expressly stated that the contest in the Magone case was "between a clause of the tariff act of 1883, providing for a duty upon sulphate of potash, *eo nomine,* and a clause exempting from duty 'all substances expressly used for manure.'" This quotation was preceded by a general statement of the rule that the commercial designation would control unless there was something else in the law that restrained its operation, and it was declared that the case of Magone *v.* Heller, *supra,* was not subject to such rule, manifestly because of the fact that chief use was the test.   See also Fink *v.* United States (170 U. S., 584); United States *v.* Kwong (1 Ct. Cust. Appls., 14; T. D. 30773); United States *v.* Horrax (1 Ct. Cust. Appls., 142; T. D. 31187); Drakenfeld *v.* United States (2 Ct. Cust. Appls., 512; T. D. 32248); Taylor *v.* United States (3 Ct. Cust. Appls., 498; T. D. 33162); Chrystal *v.* United States (5 Ct. Cust. Appls., 489; T. D. 35148).

In the case at bar, as stated, it is conceded that "the article is a toilet preparation, since its chief use is as an application to the skin." *Use* by paragraph 48 is made the test for classification of all preparations so *used.* The merchandise here is a preparation of powdered talc and boric acid, the greater part of which has been perfumed, is chiefly if not wholly used as an application to the skin, and therefore is, under the rule laid down in the cited cases, precisely within the paragraph and dutiable thereunder.

This interpretation is confirmed by the scope of the paragraph, and; if applied to the importations here, still leaves ample ground for the operation of paragraph 69, because, as appears, the greater part of imported talc would be dutiable thereunder.

In this view of the case we do not determine whether the importers' evidence is sufficient to establish the fact that these powders are definitely, uniformly, and generally known as talcum or ground talc.

The judgment of the Board of General Appraisers is *affirmed.*