(C. D. 1764)

C. J. TOWER & SONS *v.* UNITED STATES

United States Customs Court, Third Division

(Decided February 23, 1956)

*Barnes, Richardson & Colburn* (*Joseph Schwartz* and *Edward N. Glad* of counsel) for the plaintiff.

*Warren E. Burger,* Assistant Attorney General (*Richard M. Kozinn* and *William J. Vitale,* trial attorneys), for the defendant.

Before EKWALL, JOHNSON, and DONLON, JUDGES; EKWALL, J., concurring; JOHNSON, J., concurring

DONLON, Judge: ·Counsel have by stipulation, dated December 6, 1955, withdrawn the previous submission of these cases and resubmitted the several protests to the third division as now constituted.

On plaintiff's motion and without objection by defendant, the protests were consolidated for trial.

These protests are against classification of fresh or sweet corn on the cob, with husks on, as a vegetable in its natural state, not specially provided for, dutiable at 25 per centum ad valorem under paragraph 774 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. Plaintiff claims that the merchandise should be classified as "corn or maize" under paragraph 724 of the tariff act, dutiable at a rate of 25 cents per bushel of 56 pounds.

There is no dispute that in all the cases the merchandise which is subject of these protests, however described in the invoices and consumption entries (which were not introduced into the record and thus are disregarded in weighing the evidence), was, in fact, fresh (or green) sweet corn on the cob, with husks on. By definition and as a matter of common knowledge, sweet corn on the cob, with husks on, is both corn and a vegetable in its natural state. Thus, the issue narrows down to a question of law.

Plaintiff's principal argument is that the *eo nomine* designation of corn in the statute, without limitation, is more specific as to fresh sweet corn on the cob, with husks on, than is the designation of vegetables in their natural state, not specially provided for.

Defendant relies on a longstanding administrative practice, published in 1915 and apparently unpublished for some time prior thereto, of classifying fresh sweet corn on the cob, with husks on, as a vegetable in its natural state, and argues that, notwithstanding the *eo nomine* rule of construction cited by the plaintiff, the designation as a vegetable in its natural state is a designation by use and, therefore, more specific than an *eo nomine* designation not according to use. Defendant argues also that congressional intent supports its position.

It is well established, as the plaintiff contends, that an *eo nomine* designation without limitation embraces all forms of the article. To this general rule of construction there are exceptions, as when there is a contrary legislative intent, judicial decision, or, sometimes, administrative practice. *Nootka Packing Co.* v. *United States*, 22 C. C. P. A. 464, T. D. 47464.

Plaintiff in its brief suggests that if Congress intended to limit the designation "corn or maize" in paragraph 724 it could have done so, citing several examples of statutory limitations as to agricultural products. This is a speculative and specious argument. Obviously, there would be infrequent need for the court to construe congressional

intent if precise language of definition were always used. The problems of Congress in enacting tariff legislation are fairly well known. It is not always as easy to ascertain congressional intent as the plaintiff seems to suggest.

"Corn or maize" was a designation used at least as early as the Tariff Act of 1890, and it appeared also in the acts of 1894 and 1897. In each of those three acts, the provision for "corn or maize" was included in the schedule of "Agricultural Products and Provisions," under the subheading of "Breadstuffs and Farinaceous Substances." In the 1894 act, it was grouped within the provision for buckwheat, cornmeal, oats, rye, rye flour, wheat, wheat flour, and oatmeal. In the 1897 act, "corn or maize" was not so grouped but had its own special paragraph, still, however, under the subheading "Breadstuffs and Farinaceous Substances." Under that subheading in each of these tariff acts, products used as vegetables in their natural state were not included, unless fresh sweet corn on the cob is to be deemed to be so included, as plaintiff contends.

Subheadings under the general tariff schedule for "Agricultural Products and Provisions" are no longer used in the act, having been discarded in the Tariff Act of 1909. However, except for eliminating the subheading "Breadstuffs and Farinaceous Substances," Congress has continued provisions as to "corn or maize" in context close to farinaceous substances and in language as follows:

In the Tariff Act of 1890:

256. Corn or maize, fifteen cents per bushel of fifty-six pounds.

In the Tariff Act of 1894:

190. Buckwheat, corn or maize, cornmeal, oats, rye, rye flour, wheat, and wheat flour, twenty per centum ad valorem, and oatmeal, fifteen per centum ad valorem.

In the Tariff Act of 1897:

227. Corn or maize, fifteen cents per bushel of fifty-six pounds.

In the Tariff Act of 1909:

235. Corn or maize, fifteen cents per bushel of fifty-six pounds.

In the Tariff Act of 1913:

465. Corn or maize. [Free.]

In the Tariff Act of 1922:

PAR. 724. Corn or maize, including cracked corn, 15 cents per bushel of fifty-six pounds; corn grits, meal, and flour, and similar products, 30 cents per one hundred pounds.

In the Tariff Act of 1930:

PAR. 724. Corn or maize, including cracked corn, 25 cents per bushel of fifty-six pounds; corn grits, meal, and flour, and similar products, 50 cents per one hundred pounds.

The provision in paragraph 774 for vegetables in their natural state, not specially provided for, was not new in the Tariff Act of 1930. There is legislative continuity of such provision paralleling the "corn or maize" provision in the several tariff acts as follows:

In the Tariff Act of 1890:

288. Vegetables in their natural state, not specially provided for in this act, twenty-five per centum ad valorem.

In the Tariff Act of 1894:

207. Vegetables in their natural state, not specially provided for in this Act, ten per.centum ad valorem.

In the Tariff Act of 1897:

257. Vegetables in their natural state, not specially provided for in this Act, twenty-five per centum ad valorem.

In the Tariff Act of 1909:

269. Vegetables in their natural state, not specially provided for in this section, twenty-five per centum ad valorem.

In the Tariff Act of 1913:

215. Vegetables in their natural state, not specially provided for in this section, 15 per centum ad valorem.

In the Tariff Act of 1922:

PAR. 772. Vegetables in their natural state, not specially provided for, 25 per centum ad valorem: *Provided*, That in the assessment of duties on vegetables no segregation or allowance of any kind shall be made for foreign matter or impurities mixed therewith.

In the Tariff Act of 1930:

PAR. 774. Vegetables in their natural state: Peppers, 3 cents per pound; egg plant, 3 cents per pound; cucumbers, 3 cents per pound; squash, celery, lettuce, and cabbage, 2 cents per pound; crude horseradish, 3 cents per pound; all other, not specially provided for, 50 per centum ad valorem: *Provided*, That in the assessment of duties on vegetables of any kind no segregation or allowance of any kind shall be made for foreign matter or impurities mixed therewith.

Both plaintiff and defendant in their briefs refer to a ruling of the Treasury Department, dated October 20, 1915, published as T. D. 35806, in 29 Treas. Dec. 385. This ruling is in the form of a letter to the Collector of Customs at Ogdensburg, N. Y. Because this ruling may, and indeed we think does, have relevance in the ascertainment of congressional intent, we quote it here in full text, as follows:

TREASURY DEPARTMENT, *October 20, 1915.*

SIR: The department is in receipt, by reference from the Auditor for the Treasury Department, of your letter of the 27th ultimo, relative to the classification of a shipment consisting of ears of green corn, which it appears you have assessed with duty at the rate of 15 per cent ad valorem under paragraph 215 of the present tariff act as vegetables in their natural state.

You state that this assessment of duty was in accordance with the practice in your district under the present tariff act and under the tariff acts of 1909 and 1897.

In paragraph 235 of the tariff act of 1909 and paragraph 227 of the tariff act of 1897 corn or maize was specifically provided for as dutiable at the rate of 15 cents per bushel of 56 pounds, but under the act of 1897 the department held, in two unpublished decisions, that green corn on the cob was dutiable as vegetables in their natural state under paragraph 257 of the said act.

Under the present tariff act corn or maize is provided for as free of duty under paragraph 465, the entire paragraph reading "corn or maize." The department is of the opinion that this specification of "corn or maize" was intended to cover only corn or maize dutiable under paragraphs 235 of the tariff act of 1909 and 227 of the tariff act of 1897, and in view of the unpublished decisions mentioned it approves the practice at your port of assessing duty on green corn on the cob at the rate of 15 per cent ad valorem under paragraph 215 of the tariff act of October 3, 1913, as vegetables in their natural state not specially provided for.

Respectfully,                                       ANDREW J. PETERS,
    (14474.)                                            Assistant Secretary.
COLLECTOR OF CUSTOMS, Ogdensburg, N. Y.

No evidence was adduced to overcome the presumption that this administrative practice was uniform and continuing. Indeed, it is this very administrative practice, detailed in the published 1915 ruling, to which plaintiff's instant protests, covering 1953 importations, relate.

In the studies prepared by Congress preliminary to tariff revision in 1922, published as "Summary of Tariff Information, 1921," there appears on pages 800–1, under the heading "VEGETABLES IN THEIR NATURAL STATE, N. S. P. F.," a statement that 271,584 acres of the vegetable "sweet corn" were produced in 1919.

In the same summary, under the heading "CORN," at page 688, there is the following statement:

Uses.—It is estimated that 80 per cent of the domestic corn crop is consumed on farms and does not enter the channels of trade. The commercial crop is distributed in approximately the following proportions: Consumed in flour and grist mills, chiefly for human food, but also for stock feed (census of 1914), about 6.5 per cent (180,000,000 bushels); in glucose and starch factories (census of 1914), 1.6 per cent (44,000,000 bushels); in distilled spirits (1915), 1.2 per cent (32,000,000 bushels); in fermented liquors, 0.5 per cent (14,000,000 bushels); exports (average for 1911–1915), 1.4 per cent (39,000,000 bushels); fed to live stock not on farms, 5.4 per cent (about 150,000,000 bushels).

With this data before it, showing knowledge that "sweet corn" in its natural state was, for the tariff purposes Congress was considering, deemed to be a vegetable, when intended for that use, and that other kinds of "corn," when used for flour, starch, distilled spirits, livestock feed, and other such enumerated purposes, were not classified as a vegetable, Congress continued to enact the two separate classification provisions that were the subject of the 1915 Treasury Department ruling and which give rise also to the litigation now before us.

Plaintiff correctly argues that we are not bound by an erroneous administrative practice. That is true, but it calls for proof that the practice is erroneous. We are properly concerned with a long-continued administrative practice as an important guide to our ascertainment of congressional intent. When Congress, with knowledge of an administrative practice, reenacts legislation that is consonant with that practice, Congress has been held by the courts to have intended to approve the practice, in the absence of expressed intent to the contrary. *Komada & Co.* v. *United States,* 215 U. S. 392.

The administrative practice in question here is classification of fresh (or green) sweet corn on the cob, with husks on, as a vegetable in its natural state, not specially provided for. It is a practice possibly dating back at least to the 1894 act, subject of certain unpublished rulings, and certainly was the subject of a 1915 published ruling under the 1913 act. Thereafter, when considering 1922 tariff legislation, Congress had before it detailed tariff information in which sweet corn was described as a vegetable in its natural state, not specially provided for, quite separate and apart from the classification of corn for nonvegetable uses, among the farinaceous substances.

There remains one further point significant in this case. It was treated only incidentally in the briefs filed with us. It does not change our opinion and may, therefore, be disposed of without any considerable discussion.

It has been held that the paragraph for vegetables in their natural state, not specially provided for, is a designation by use. *Nix* v. *Hedden,* 149 U. S. 304, 37 L. ed. 745. Plaintiff, in its brief, seems to concede that a designation by use is more specific than an *eo nomine* designation. It has been so held. *Mangone* v. *Heller,* 150 U. S. 70; *Roger & Gallet et al.* v. *United States,* 7 Ct. Cust. Appls. 89, T. D. 36424. Plaintiff, however, cites also *M. Pressner & Co.* v. *United States,* 42 C. C. P. A. (Customs) 48, C. A. D. 568, as authority for its contention that designation by use is not necessarily more specific than an *eo nomine* designation. The *Pressner* case, however, held that congressional intent was controlling with respect to competing provisions. We find here a congressional intent contrary to the construction for which the plaintiff argues.

We hold that the merchandise in the protests is fresh sweet corn on the cob, with husks on, imported for use as a vegetable; that such corn is a vegetable in its natural state, not specially provided for; and that it is dutiable under paragraph 774 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, at 25 per centum ad valorem. The protests are, therefore, overruled and judgment will be rendered accordingly.

EKWALL, Judge: I agree with the holding that the merchandise, green corn on the cob, with husks on, is properly dutiable, as assessed by the collector, as "Vegetables in their natural state: * * * Not specially provided for," under paragraph 774 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802. It is significant that paragraph 724 of said act, the competing paragraph, provides a rate per bushel of 56 pounds and is an indication, in my opinion, that Congress had in mind grain corn, rather than fresh corn on the cob, in enacting that paragraph.

The term "corn," as used in the United States, usually refers to the seeds of Indian corn, growing on a woody cob. Funk & Wagnalls New Standard Dictionary; Webster's New International Dictionary. The seeds or kernels of sweet corn, when green, are eaten as a vegetable, but the hard ripe seeds or kernels of other varieties, after being shelled from the cob, are usually ground as a grain, or fed to horses, hogs, and sometimes to cattle, without grinding. It has been agreed that the instant merchandise is sweet corn, and not grain corn that is used for feed purposes or certain processing. That Congress, in tariff legislation, intended the term "corn" to refer to grain corn is evidenced by the fact that the provision for corn was made either under a subheading "Breadstuffs and Farinaceous Substances" or in the portion of the tariff act which covered such substances. In the Tariff Act of 1930, this portion is separated from the vegetable portion of schedule 7 by the respective provisions for fruits, horticultural items, nuts, and seeds. In both the Summary of Tariff Information, 1921 (p. 688) and the Summary of Tariff Information, 1929 (p. 1183), reference is made under the corn paragraph to the fact that 80 to 85 per centum of the crop is consumed on the farm and that most of the balance is used as stock feed or is consumed in flour or grist mills. In the Summary of Tariff Information, 1921 (p. 800), under the paragraph for vegetables in their natural state, reference is made to sweet corn, and in the Summary of Tariff Information, 1929 (p. 1447), under the prepared vegetable paragraph, reference is made to canned corn. Evidently, the provision for "corn" was not intended to include such corn as is used as a vegetable.

Furthermore, according to the evidence herein and the regulations of the Department of Agriculture, that Department has set up standards under the United States Grain Standards Act (7 U. S. C. § 71) for such corn as is defined as a grain, consisting of 50 per centum or more of shelled corn of the dent and flint varieties. (7 Code Federal Regulations § 26.151.) The record indicates that these varieties are grain corn and are not used in the same manner nor bought by the

same class of purchasers as green or sweet corn. The Department has also provided consumer standards for corn on the cob, which is required to consist of cobs, well filled with tender, plump, and milky kernels. (7 Code Federal Regulations § 51.201 (1949 edition, 1952 cumulative pocket supplement); 7 Code Federal Regulations § 51.810 (1953 edition).) Such corn, of course, is the type eaten as a vegetable. While standards of the Department of Agriculture are not controlling in customs cases, they are pertinent in determining the identity of particular products. *Gallagher & Ascher Co.* v. *United States*, 24 Cust. Ct. 1, C. D. 1199.

In the case of *United States* v. *Wing Chong Lung Co. et al.*, 33 C. C. P. A. (Customs) 36, C. A. D. 312, the court had before it certain salted turnips, which had been cut, sliced, reduced in size, and prepared or preserved by means of salt. It was there held that the merchandise was properly dutiable under the provision in paragraph 775 of the Tariff Act of 1930, for "Vegetables * * *, if cut, sliced, or otherwise reduced in size, * * *, or packed in salt, brine, oil, or prepared or preserved in any other way and not specially provided for," rather than under the *eo nomine* provision for turnips in paragraph 773 of the same act, as modified by the trade agreements with Canada, T. D. 48033 and T. D. 49752. This holding was based upon a finding that the *eo nomine* provision for turnips contemplated turnips in their natural state, as evidenced by the legislative intent. While the legislative intent in the instant case is not too clear, nevertheless, I think the record fails to overcome the presumption of correctness attaching to the collector's action.

CONCURRING OPINION

JOHNSON, Judge: I join in Judge Ekwall's concurring opinion.